Fahey, J.
Plaintiff, Thomson McKinnon Securities, Inc. (“Thomson”), brought this action in 1986 against defendants, Christopher Barden Lewis, Dorothy Well-come Lewis Harvey, and Wellcome Research Corporation d/b/a Wellcome Financial (“Wellcome”), alleging that Wellcome (1) breached her contract with Thomson and (2) engaged in fraudulent activity with regards to her account at Thomson. Service was made on Well-come at Building #2, Apartment #2, Lord Baron Apartments, Baron Park Lane, Burlington, Massachusetts. Wellcome failed to respond to Thomson’s allegations and this Court ordered a default judgment against Wellcome in 1987. In September 1999, Wellcome moved to remove the default judgment claiming that the judgment is void as she had moved from her Burlington apartment and that she had “recently learned that a default judgment entered against (her)”; her motion was denied on December 6, 1999. Well-come now moves to reconsider her motion to vacate on the grounds that the judgment against her is void.
After receiving from Wellcome her motion to vacate default judgment, Thomson and Gary Lewis (“Lewis”), Wellcome’s son whom she sued in a prior action, opposed the motion and then jointly moved for sanctions and attorneys fees against Wellcome and Dorothy Driscoll (“Driscoll”), Wellcome’s attorney, pursuant to G.L.c. 231, §6F. Thomson and Lewis allege that Wellcome and Driscoll advanced wholly insubstantial, frivolous claims in bad faith. Thomson and Lewis also seek Rule 11 sanctions against Driscoll.
For the reasons stated below, Wellcome’s motion for reconsideration is ALLOWED. On reconsideration, Wellcome’s motion to vacate judgment is DENIED. Thomson and Lewis’ joint motion for sanctions is ALLOWED.
BACKGROUND
In 1986, Wellcome was sued twice in connection with her involvement in an “investment advisory” company known as Wellcome Research Corporation d/b/a Wellcome Financial. The first suit was brought by Mr. and Mrs. Adolph, defrauded investors of Wellcome Financial (“the Adolph matter”). Thomson McKinnon, a brokerage company with which Wellcome had an account, brought a second suit, the instant action, against Wellcome within days of the Adolph matter (the “McKinnon matter”). Wellcome’s account with Thomson McKinnon was overdrawn by approximately $130,000. Wellcome failed to file an Answer in both cases. In or about 1986, Wellcome retained legal counsel, not Driscoll, who advised her to place her condominium in a trust to avoid any levy which could be placed on it in connection with the two lawsuits. Wellcome, therefore, was aware in 1986 of both the Adolph and McKinnon matters.
In 1987, Wellcome brought a Motion to Vacate Default in the Adolph matter claiming that she was “never served” on account of her having changed her residence on January 22, 1987. Her motion also advised the court that she had retained Brian Bixby as her counsel. Counsel in the Adolph matter and Wellcome’s counsel agreed to dismiss her from the Adolph matter but not from the McKinnon matter. Thereafter, in 1987, a default judgment in the McK-innon matter was entered against Wellcome. The record supports this court’s finding that Wellcome knew of the levy which was placed on some of her assets as a result of said default judgment.
As support for her Motion to Vacate in this case, Wellcome claims improper service. Wellcome asserts that she moved to a condominium in Clinton on February 20, 1986.[2] A counter-affidavit signed by Gary Lewis submitted in opposition to her Motion to Vacate indicates that his mother’s move to the condominium in Clinton occurred over the weekend of March 1, 1986, by which time his mother told him she had already received service of the McKinnon papers. The mortgage and statement paper of the Clinton *782 condominium indicates that the purchase of that property occurred on February 21, 1986, the day after Wellcome claims in this case that she moved. Notwithstanding all of this seemingly conflicting evidence, it seems unnecessary to determine exactly when Well-come moved as Wellcome’s affidavit states that “During February of 1986 and for some prior years thereto I resided at an apartment located at Building 2, Apt. 2, Baron Apts., Baron Park Lane, Burlington, MA.” See Wellcome Aff. ¶2. In any event, this Court discredits the Affidavit and Supplementary Affidavit of Wellcome to the extent they imply that on February 24, 1986, the date of the constable’s service and mailing, the Burlington address was not her last and usual place of abode.
On June 3, 1996, Wellcome brought a civil action against her son, Lewis, in the Middlesex Probate Court (the “Lewis matter”). In the Lewis matter, Wellcome made various accusations of fraud and breach of fiduciary duty relating to matters occurring from 1982-1996.
On April 18, 1997, Wellcome sought reconsideration in the Probate Court of her Motion to Disqualify Counsel in the Lewis matter on the ground that Robert McLaughlin (“McLaughlin"), had supposedly represented her in the early 1980s. On June 3, 1998, the Probate Court held an evidentiary hearing on this allegation. At that hearing, Wellcome was represented by Driscoll, her current counsel. During the eviden-tiary hearing, Wellcome testified under oath that in 1986 she placed her condominium into a trust due to advice from McLaughlin as well as her family. Well-come also testified that she put her condominium into the trust soon “following the time of the Thomson McKinnon complaint.” Led by Driscoll’s questioning, Wellcome offered testimony to demonstrate that McLaughlin advised her to protect her condominium from seizure by Thomson. Wellcome’s testimony on June 3, 1998 established that (1) she knew in 1986 that she was sued by Thomson; (2) she could identify the docket sheet on the McKinnon matter; and (3) the McKinnon matter was contemporaneous with Wellcome’s purchase of the condominium. As Wellcome’s counsel, Driscoll was aware, no later than this hearing on June 3, 1998, of Wellcome’s knowledge of the McKinnon matter. Wellcome’s Motion for Reconsideration on her Motion to Disqualify was denied.
Furthermore, in signing her Answers to Lewis’ First Set of Interrogatories on August 10, 1998, Wellcome admitted that she had knowledge of the McKinnon matter. She stated that she was involved in the McK-innon matter which resulted in a judgment for Thomson. She gave the name, docket number, and result of that case in her Answers, which were served on the other parties by her counsel, Driscoll.
On June 11,1999, the first day of trial in the Lewis matter, Driscoll, on behalf of Wellcome, filed a motion to enjoin Lewis from levying on the Thomson execution. The court granted the motion but expressly ordered that the restraining order expire in September 1999.
After the restraining order expired, Wellcome made no attempt to extend it. Rather, she, through Driscoll, brought a Motion to Vacate Default Judgment and Supersede Execution before this Court, filing it on September 22, 1999. Thomson and Lewis, as the owner of the execution, opposed the motion.
In her Motion to Vacate Default Judgment and Supersede Execution and supporting Affidavit, filed by Driscoll, Wellcome asserted that she only “recently learned” of the default judgment in this case. This is similar to the assertion she made twelve years earlier in the Adolph matter. She also contested having been properly served and detailed her change of domicile. In her Supplementary Affidavit in support of that motion, Wellcome denied receiving until “recently,” any notice or oral advice of the existence of the McK-innon matter. At oral argument on the motion, Well-come again represented through Driscoll that she was ignorant of the case until “recently.” This court denied Wellcome’s Motion to Vacate Default Judgment on December 6, 1999.
By 1996, Driscoll was aware of Wellcome’s knowledge of the McKinnon matter since she represented Wellcome in the Lewis matter in 1996. For instance, in a deposition of Lewis on September 26, 1996, Driscoll discussed the McKinnon judgment against Wellcome with Lewis. Despite her awareness in 1996, 1997, and 1998 of the default judgment against Well-come in the McKinnon matter, Driscoll represented Wellcome in the instant matter, filing Wellcome’s Affidavit and Supplementary Affidavit, and also arguing that Wellcome had “recently” learned of the default judgment as support for Wellcome’s Motion to Vacate Default Judgment and Supersede Execution.
DISCUSSION
A. Wellcome’s motions to reconsider and vacate default judgment
1. Wellcome’s Motion for Reconsideration
Wellcome requests that this court vacate the default judgment against her in the McKinnon matter. If a court has not obtained valid jurisdiction over a defendant’s person, any judgment entered against that defendant is void and relief from such judgment must be granted as a matter of law pursuant to Mass.R.Civ.P. 60(b)(4). As grounds for her request, Wellcome claims that Thomson never properly served her with process in accordance with the requirements of Mass.R.Civ.P. 4(d). Specifically, Wellcome submits an affidavit asserting that she was served at an address in Burlington, Massachusetts, but that she resided, at the time of service, in Clinton, Massachusetts, and not at the Burlington address. Wellcome further asserts that she did not learn about the McK-innon matter until “recently,” long after a default judgment was entered against her. Because Wellcome *783 asserts an important matter of substance not previously specifically articulated in her previous Motion to Vacate Default Judgment, this Court allows Wellcome’s Motion for Reconsideration.[3]
2. Wellcome’s Motion to
Vacate Default Judgment
Wellcome asks that this Court vacate the default judgment against her in the McKinnon matter. On reconsideration, this Court disbelieves Wellcome’s affidavits as well as her assertions. This court concludes that Wellcome knew about the McKinnon matter well before she admits knowledge of this case. First, it is evident based on her testimony in the Lewis matter that Wellcome knew about the McKinnon matter before the default judgment in 1987. At the evidentiary hearing in Probate Court on her Motion for Reconsideration of her Motion to Disqualify counsel, Wellcome testified that she was sued by Thomson in 1986. Second, Wellcome also testified, at that same hearing in 1998, that she placed her condominium into a trust soon “following the time of the McKinnon complaint” as a result of advice by her family and Attorney McLaughlin. Third, in Wellcome’s Answers to Interrogatories in the Lewis matter, dated August 1998, she admitted that Thomson brought suit against her and obtained a judgment against her. Relying on the above-mentioned evidence, this Court finds that Well-come was well aware of the McKinnon action years before she initiated in September 1999 her Motion to Vacate Default Judgment in this case.
Wellcome also contends thát failure to serve process upon a defendant renders any judgment void and that there is no time limitation from obtaining relief from a void judgment. For this proposition, Wellcome cites numerous authorities such as Witzgall v. Witzgall, 334 Mass. 365, 368 (1956) (holding that “[questions of jurisdiction of a court over the subject matter or parties may be raised at any stage of the proceedings”); Metivier v. McDonald’s Corp., 16 Mass.App.Ct. 916 (1983) (allowing defendant’s motion to vacate, although made four years after default judgment was entered in plaintiffs favor, because it was uncontro-verted that plaintiff improperly served an agent of McDonald’s restaurant instead of the distinct corporate entity, McDonald’s corporation). The authorities cited by Wellcome are easily distinguishable.
At the hearing on the Motion for Reconsideration and the Motion for Sanctions, counsel for Driscoll argued that a party not properly served may do nothing, even once that party learns of the lawsuit, until proper service is made. Here, Wellcome deliberately ignored the Thomson matter, except as necessary to protect her assets by placing her condominium in trust, although she knew Thomson brought suit against her and even though she knew both that a default judgment was entered against her and that her account at Thomson had been levied. While service of process is not perfected until the summons and complaint is received in hand or at least left at the last and usual place of abode of the defendant, a court may properly deny a motion to vacate where (1) the defendant becomes aware of the litigation at an “early stage”; (2) the defendant’s motion to vacate is “unseasonably late” after such notice and deliberate inaction; and (3) the defendant fails to provide a convincing and detailed outline of her alleged defense. Konan v. Carroll, 37 Mass.App.Ct. 225, 229-30 (1994), citing Atlas Elevator Co. v. Stasinos, 4 Mass.App.Ct. 285, 288 (1976). In this case, Wellcome placed her property in trust in 1986 in order to protect her assets from the Thomson matter. As evidenced in both her Answers to Interrogatories in the Probate Court case filed in August 1998 and her testimony in June 1998, Wellcome clearly knew about the McKinnon matter no later than June 1998. Further, Wellcome has failed to provide any convincing and detailed outline of any alleged defense as to why she did not act earlier, or indeed, as to her defenses to this case against her.
In their oral argument on these motions, Wellcome and Driscoll[4] contend that Colley v. Benson, Young & Downs Insurance Agency, Inc., 42 Mass.App.Ct. 527 (1997), overrules Atlas, supra. This Court disagrees. In any event, Colley is easily distinguished from the case at bar. In Colley, the Appeals Court held that the Superior Court judge did not abuse his discretion in denying defendant’s motion for relief from default judgment although there was improper service, since personal jurisdiction was established by waiver, specifically, the nonassertion of an improper service defense in filings, such as the Answer to the Court made prior to the motion for relief from judgment, which Answer was not shown to be unauthorized. Id: Here, unlike Colley, supra, Wellcome failed to file an Answer to Thomson’s complaint. Wellcome failed to act at all until twelve years after the court entered a default judgment against her, even though she knew of the case years before.
Further, there was a sheriffs return in this case. A sheriffs return is “conclusive as to all matters which are properly the subject of returns . . . The fact that service was made by mail and by delivery at the last and usual place of abode in the Commonwealth known to the officer is one properly the subject of the sheriff s return." Atlas, supra at 288. Here, the sheriffs return, even if not conclusive, is prima facie evidence of proper service. Johnson v. Witkowski, 30 Mass.App.Ct. 697 (1991).
Accordingly, while Wellcome may argue that she was not properly served in the McKinnon matter, she had notice of the lawsuit for some period of years prior to attempting to remove the default. Even if she had not been properly served, which I do not find, any lack of proper service did not warrant her failure to act on the matter for as long as she failed to act, while knowing of the case. Further, she does not provide any, let alone any sufficient, outline of her defense. Hence, her Motion to Vacate Default Judgment is denied.
*784 B. Sanctions
1. Rule 11
Thomson and Lewis ask that this Court impose sanctions against Wellcome and Driscoll pursuant to G.L.c. 231, §6F and against Driscoll under Mass.R. Civ.P. 11. Thomson and Lewis jointly argue that both Wellcome and Driscoll frivolously filed a motion to vacate judgment and submitted false affidavits in support of that motion, thus justifying the imposition of sanctions.
The purpose of Rule 11 is to “restrain frivolous and abusive litigation." U.S. Funding. Inc. of America v. Bank of Boston Corp., 28 Mass.App.Ct. 404, 406 (1990), quoting Anderson v. Cryovac, Inc., 96 F.D.R. 431, 413 (D.Mass. 1983) See also Business Guides, Inc. v. Chromatic Communications Enterprises, 498 U.S. 533, 552 (1990). Under Rule 11, sanctions may be issued against an attorney when a pleading is filed absent “good grounds.” Mass.R.Civ.P. 11. “Good grounds” means “reasonable inquiry and an absence of bad faith.” Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. 137, 142 (1996). An attorney must “show a subjective good faith belief that the pleading was supported in both fact and law.” Van Christo Advertising, Inc. v. M/A-Com/LCS, 426 Mass. 410, 416 (1998). Attorneys cannot rely on “willful ignorance of the facts.” Id. at 417.
Here, Driscoll willfully disregarded evidence she herself had offered another court and submitted a motion based on inaccurate materials. The evidence shows that Driscoll could not have reasonably believed that Wellcome was until “recently” unaware of the Thomson lawsuit. In fact, Driscoll knew from personal experience of being Wellcome’s counsel that Wellcome was aware of the lawsuit, at least by June 1998 when she gave testimony in the Lewis matter that she placed her condominium in a trust in 1986 as a result of the McKinnon matter and by August 1998 when Wellcome filed Answers to Interrogatories. Further evidence demonstrates that Driscoll knew in 1996 when she deposed Lewis that there existed a judgment against Wellcome in this lawsuit. At the very least, Driscoll should not have submitted Wellcome’s affidavit dated September 14, 1999 stating that she had “recently learned that a default judgment entered against me in the instant matter” as Wellcome stated in Paragraph 4 of her Affidavit submitted with Driscoll’s Motion to Vacate Default Judgment and Supersede Execution. On December 1, 1999, Driscoll, in response to the opposition to the Plaintiffs Motion to Vacate Judgment, submitted Wellcome’s Supplementary Affidavit which stated in Paragraph 5 “At no time did I ever receive a summons or any other notice in the matter of Thomson McKinnon Securities, Inc.” Being Wellcome’s counsel in the Lewis matter, Driscoll had to know this statement was false and therefore Driscoll should not have submitted it. Driscoll went beyond a “willful ignorance of the facts” as she submitted her client’s two affidavits which she knew were not supported in fact.
Driscoll’s motion regarding whether or not the judgment is void because service was perfected on Well-come is a colorable argument and is not under scrutiny for the imposition of sanctions. Driscoll, however, set forth a false claim on Wellcome’s behalf arguing that Wellcome only “recently” learned about the Thomson McKinnon matter. Rule 3.3(a)(4) of the Professional Rules of Responsibility prohibits offering “evidence that the lawyer knows to be false.” See also In the Matter of McCarthy, 416 Mass. 423 (1993). Driscoll has violated this rule in her representation of Wellcome. Hence, this court imposes Rule 11 sanc: tions on Driscoll.[5]
2. G.L.c. 231, §6F
G.L.c. 231, §6F allows courts to award costs as to parties and as to attorneys as well as attorneys fees if a court determines that “all or substantially all of its claims, defenses, set-offs, or counterclaims, were wholly insubstantial, frivolous and not advanced in good faith.” Massachusetts Adventure Travel, Inc. v. Mason, 27 Mass.App.Ct. 293, 297 (1989). Neither a wholly objective, nor a wholly subjective standard is applied when judging the conduct of the party against whom fees are sought in determining the presence, or lack thereof of good faith. Id. In order to award attorney’s fees under this statute, the court must have a hearing and make an explicit judicial finding that the defendant’s claims were not advanced in good faith. Bartlett v. Greyhound Real Estate Finance Co., 41 Mass.App.Ct. 282, 292 (1996). The hearing occurred on April 25, 2000; this Court finds that Wellcome’s claims relative to when she knew of the McKinnon matter were false and not advanced in good faith. Therefore, this court orders G.L.c. 231, §6F sanctions against Wellcome.[6]
Neither counsel for Wellcome nor counsel for Driscoll have opposed either the hourly charges or the rates charged by counsel. Based on this lack of opposition to any counsel’s rates or hours, as well as the affidavits of Mr. Klebanoff and Mr. Edmands for rates and time charges, this Court finds reasonable Mr. Klebanoff s hourly rate of approximately $305.00 and Mr. Edmands’ hourly rate of approximately $282.00 and the hours each worked on this matter.
Accordingly, this court awards the full amount of costs and attorneys fees of $9,021.10.[7]
ORDER
For the foregoing reasons, it is hereby ORDERED that Wellcome’s motion for reconsideration is ALLOWED, and that Wellcome’s motion to vacate default judgment is DENIED. It is FURTHER ORDERED that Thomson and Lewis’ joint motion for sanctions is ALLOWED and that Driscoll and Wellcome are each jointly and severally liable for the full amount of costs and attorney’s fees of $9,021.10 ($1,775.10 payable *785 to Bruce Edmands and $7,247.80 payable to David L. Klebanoff), which is to be paid within 30 days.

This conflicts with the affidavit submitted by Wellcome in Adolph stating that she had moved from Burlington and was a resident of Clinton by February 17, 1986.

The Motion for Reconsideration specifically relies on Rule 4(d) and 60(b)(4) of the Mass.R.Civ.P. The original motion did not specifically reference any rule.

At the hearing, Driscoll continued to appear for Wellcome and separate defense counsel appeared for Driscoll.

This court considers this public decision and the imposition of these financial sanctions sufficient to satisfy the obligations imposed on and required of me by Canon 3(B)(3) such that further referral is not necessary.

Because this Court has issued Rule 11 sanctions against Driscoll, it does not discuss whether G.L.c. 231, §6F sanctions may be additionally imposed against Driscoll.

Both Mr. Klebanoff and Mr. Edmands’ hourly rates are calculated based on information provided by Mr. Klebanoffs two Affidavits submitted to this court on February 15, 2000 and May 3, 2000 and Mr. Edmands’ Affidavit submitted to this court on February 11, 2000.